Argued and submitted September 3, Court of Appeals reversed, case remanded to
Board of Parole November 26, 1985

NOBLE A. PRICE,
*Petitioner on Review,*

*v.*

OREGON STATE BOARD OF PAROLE,
*Respondent on Review.*

(46805; CA A32076; SC S31751)

709 P2d 1075

Orrin Leigh Grover, Molalla, filed the petition and argued the cause for petitioner on review.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent on review.

CARSON, J.

## CARSON, J.

Petitioner appealed an order of the Oregon State Board of Parole (Board) setting his parole release date. He contended that the Board abused its discretion by violating its own rules in setting both his history/risk score and offense severity rating, which resulted in increasing the prison time he must actually serve before release on parole from 16 to 30 months. The Court of Appeals affirmed without opinion. 72 Or App 780, 696 P2d 24 (1985). We allowed review to decide whether the Board violated its own rules by considering, in setting an offense severity rating, an admission by the inmate of a prior criminal act for which he was not prosecuted. We reverse and remand to the Board.

In 1981, petitioner's daughter turned 18 years of age and reported to the Children's Services Division that her father had been sexually abusing her for the last several years. Petitioner was arrested and charged with the crime of Rape in the First Degree. Petitioner pleaded guilty to the charge for having sexual intercourse with his daughter when she was under 16 years of age. ORS 163.375(1)(c).[1] No other charges were brought against petitioner. Petitioner admitted, however, that he had been regularly engaging in sexual intercourse with his daughter since she was approximately eight years old. This admission was reported in petitioner's presentence report.

Petitioner was sentenced to a 10-year term of imprisonment, the execution of which was suspended, and he was placed on probation for five years. His probation was revoked in 1984, for violating a condition of his probation, and he began serving his 10-year sentence.

In June 1984, within six months of petitioner's incarceration, the Board held a prison term hearing to determine his parole release date, pursuant to ORS 144.120(1) and

---

[1] ORS 163.375(1) provides:

"A person who has sexual intercourse with a female commits the crime of rape in the first degree if:

"* * * * *

"(c) The female is under 16 years of age and is the male's sister, of the whole or half blood, his daughter or his wife's daughter."

applicable Board rules. At the hearing, the Board set petitioner's criminal history/risk assessment score at 10, his offense severity rating at six, and his time of incarceration at 30 months.

The Board's rules state that an inmate's initial parole release date is determined by the intersection of the prisoner's history/risk score and offense severity rating on a table of guideline ranges called the "guideline matrix." OAR 255-35-025(1) and Exhibit C thereto. Neither score is a statutory term; both were created by rule as part of the guideline matrix established by the Advisory Commission on Prison Terms and Parole Standards and adopted by the Board.

The history/risk score is a rating from 0-11 based upon the seriousness of the inmate's prior convictions and other factors, such as failed parole or a heroin abuse problem, the absence of which are deemed likely to predict success on parole. Exhibit B to OAR 255-35-015. A higher rating results in a shorter term of incarceration.

An inmate's offense severity rating is "[t]he classification given to a prisoner's commitment offense according to the seriousness of the crime." OAR 255-35-005(1). The rule also states: "Some broad offenses, which include various types of criminal behavior (*e.g.,* burglary, theft, robbery, et al.), are separated into different categories on the basis of actual criminal conduct." OAR 255-35-005(1). According to OAR 255-35-010(1): "The Board shall assign an offense severity rating from one to seven, according to Exhibit A, for each prisoner's crime of commitment." Here, a higher rating results in a longer term of incarceration.

First Degree Rape has two offense severity subcategories:

"*Subcategory 1 - rating of 6*

"Stranger to stranger; aggravated custodial interference; breaking and entering; threat to use or use of a weapon; or actual or attempted serious bodily or emotional harm; or

"Intercourse with female under 12.

"*Subcategory 2 - rating of 5*

"All other cases." Exhibit A, Part II, to OAR 255-35-010.

The Board based petitioner's crime severity rating on his

admission, which he repeated to the Board during his prison term hearing, that he had been engaging in sexual intercourse with his daughter since she was under 12 years of age.

Petitioner challenged the setting of both scores. He argued that his history/risk score should have been an 11 and his offense severity rating a five.[2] He conceded, however, that setting the history/risk score at 10 (instead of at 11) did not change his parole release date. The Board's alleged abuse of discretion in setting his offense severity rating, however, delayed his parole release date approximately 14 months.[3] Because petitioner conceded that the first alleged error did not affect his parole release date, we allowed review only to consider the propriety of the Board's basing petitioner's offense severity rating on his admission of another criminal act for which he had not been, and could not now be, prosecuted.[4] We review pursuant to ORS 144.335.

Petitioner argues that the Board's own rules about offense severity ratings allow it to consider only the facts surrounding the crime for which the inmate has been committed and not other crimes occurring years before, whether or not they involved the same victim. The state counters that the Board's interpretation of its own rules must be accorded great weight; that the Board can consider an inmate's "criminal conduct package" or "continuing course of conduct" in setting an offense severity rating; and that the Board is not limited to consideration of the facts relating to the specific commitment offense.

---

[2] Petitioner actually phrases his argument in terms of the Board "revising" his offense severity rating from a five to a six, based upon the fact that the preparer of his presentence report gave him a rating of five. We also note that the Board analyst gave petitioner a crime severity rating of six, but for a different reason. The Board analyst based his rating on "aggravated custodial interference." While it is unfortunate that petitioner received discrepant ratings, the ratings by the presentence report preparer and the Board analyst are merely "estimates." *See* ORS 144.790(1). Only the Board has statutory authority to determine the ratings that establish an inmate's parole release date. ORS 144.120.

[3] According to the guideline matrix, if petitioner received an offense severity rating of five, he would be incarcerated for 16-24 months; if he received a rating of six, he would be incarcerated for 30-40 months. Exhibit C to OAR 255-35-005 *et seq.*

[4] Petitioner could not have been prosecuted in 1981 (when his daughter was 18 years of age) for having sexual intercourse with his daughter when she was under 12 years of age because the statute of limitations for felony offenses had run. *See* ORS 131.105 to 131.155.

The legislature has authorized the Board to determine the actual duration of an inmate's imprisonment. ORS 144.120(1). ORS 144.780(1) directs the Advisory Commission on Prison Terms and Parole Standards to propose to the Board, and the Board to adopt, rules establishing ranges of duration of imprisonment to be served for felony offenses prior to release on parole. In so doing, the Board must seek to achieve "[p]unishment which is commensurate with the seriousness of the prisoner's criminal conduct." ORS 144.780(2)(a). The legislature has also provided that "[t]he ranges * * * shall give primary weight to the seriousness of the prisoner's present offense and his criminal history." ORS 144.780(3). The Board's statutory authority to deviate from the matrix guideline ranges, whenever justified by aggravating or mitigating factors, is found in another section of the statutes. ORS 144.785.

The legislative history of ORS 144.780 and 144.785 suggests that proponents of the legislation were concerned with achieving rational, consistent and equitable sentences for similar criminal conduct and with structuring, but not eliminating, the Board's discretion to set parole release dates.[5]

Pursuant to the statutory directives, the Board has adopted rules relative to parole release dates. OAR 255-35-005 *et seq.* Because it appears from the record that the Board applied the rules that were in effect on the date of petitioner's prison term hearing, and petitioner has not argued otherwise, we decide this case on the basis of the rules as they existed at that time, *i.e.,* the rules that took effect May 19, 1982.[6]

Petitioner does not dispute the Board's authority to go beyond the statutory elements of the crime of commitment and make subcategories based upon the inmate's "actual criminal conduct." The legislative history of ORS 144.780 suggests that this was the legislature's intent.[7] In fact, the rule

---

[5] Minutes, House Committee on Judiciary 6 (March 21, 1977 — Statement of Edward J. Sullivan, representing the Governor's Task Force on Corrections).

[6] The Board recently revised its rules, effective May 31, 1985. These rules, however, are not retroactively applied. While the rules relevant to setting an inmate's offense severity rating have been altered somewhat, even if we were to apply the new rules herein, we do not find anything in them which contradicts our holding.

[7] The legislative history of ORS 144.780(2)(a) (Or Laws 1977, ch 372, § 2) discloses that Representative Rutherford suggested substituting the word "crime" for

specifying the subcategories of First Degree Rape does this by increasing the offense severity rating when such non-statutory factors are present as "[s]tranger to stranger," "breaking and entering," "threat to use or use of a weapon," or "[i]ntercourse with female under 12."

■ An agency's interpretation of its own rule is accorded some deference. *Branscomb v. LCDC,* 297 Or 142, 145, 681 P2d 124 (1984). The deference due an agency's interpretation of its own rule depends upon its consistency with the purpose and wording of that rule, the agency's other rules, and the purposes of the relevant statutes. The reviewing court must remand the order to the Board if it finds the Board's exercise of discretion to be "[i]nconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency." ORS 183.482(8)(b)(B), which is made a part of ORS chapter 144 by cross-reference in ORS 144.335(3).

■ ■ The plain language of the relevant rules (OAR 255-35-005(1) and 255-35-010(1)) states that it is the inmate's "commitment offense" or "crime of commitment" which is to be rated under offense severity. Nothing in the text of these rules, or in any other rule in OAR chapter 255, indicates that the Board can consider, in setting an inmate's offense severity rating, an admission to another crime that occurred years before, for which the inmate was not prosecuted and could not now be prosecuted. In determining an inmate's offense severity rating, the Board's own rules do not permit it to look beyond the nature and circumstances of the "commitment offense."

This interpretation is consistent with the wording of the Board's other rules. OAR 255-35-035(1) describes how, and under what circumstances, the Board can deviate from the guideline ranges, based upon findings of aggravation or mitigation. Subsection (1)(c) of this rule clearly states that under certain circumstances the Board may deem it an aggravating circumstance when the inmate has pleaded guilty

"criminal conduct" in HB 2013. He retracted his suggestion, however, when he was informed by Legal Counsel to the House Committee on Judiciary that the Board would use the phrase "criminal conduct" as a means to go behind the crime of conviction in order to determine what the criminal conduct really was. Minutes, House Committee on Judiciary 6 (April 19, 1977).

to the commitment crime and also "admitted or stipulated to facts either in court or before the Board which show the occurrence of more serious charges or other charges which have not been brought or have been dismissed." Thus, under the Board's rules, an inmate's admission before the Board to a crime for which no charge was brought could have been deemed an aggravating circumstance, justifying a departure from the guideline ranges.[8] The offense severity rating rules, however, contain no such language.

This interpretation is also consistent with the purpose of the relevant statutes. As discussed above, ORS 144.780(3) provides: "The ranges, in achieving the purposes set forth in subsection (2) of this section, shall give primary weight to the seriousness of the *prisoner's present offense* and his criminal history." (Emphasis supplied.) Thus, petitioner's challenge to the Board's interpretation and application of its offense severity rating rule is valid.

The decision of the Court of Appeals is reversed. The case is remanded to the Oregon State Board of Parole to redetermine petitioner's offense severity rating and parole release date in accordance with this opinion.

---

[8] The Board found one aggravating factor, a vulnerable victim, and one mitigating factor, petitioner's probation violation was technical and not criminal in nature. Neither of these two factors appears to have affected petitioner's parole release date, and neither is herein at issue.