Argued and submitted December 21, 1995, affirmed August 28, petitioner's petition for reconsideration filed August 28 allowed by opinion November 13, 1996

See 144 Or App 375, 927 P2d 138 (1996)

BRUCE ERVIN GRESS,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

(CA A85110)

924 P2d 329

Eric M. Cumfer, Deputy Public Defender, argued the cause for petitioner. With him on the brief was Sally L. Avera, Public Defender.

Christine Chute, Assistant Attorney General, argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Robert K. Lau, Assistant Attorney General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Petitioner seeks review of orders of the Board of Parole and Post-Prison Supervision (the Board) that declared him to be a predatory sex offender. ORS 181.585 to ORS 181.589.[1] We consider only his argument that designating him a predatory sex offender imposed punishment for a crime that he committed before the adoption of the applicable statutes and thus violated the *ex post facto* clauses of the state and federal constitutions. Or Const, Art I, § 21; US Const, Art I, § 10. Because the designation does not in itself constitute punishment, we affirm.

Under ORS 181.585, a person who has been convicted of committing or attempting to commit one of several sex crimes and who exhibits characteristics showing a tendency to victimize or injure others is a predatory sex offender. ORS 181.586(1) provides that, if the Board determines that a person on parole or post-prison supervision is a predatory sex offender, it shall notify anyone whom it considers appropriate of that designation.[2] It then provides:

"(2) In making a determination under subsection (1) of this section, the agency *shall consider* notifying:

"(a) the person's family;

"(b) The person's sponsor;

"(c) Residential neighbors and churches, community parks, schools, convenience stores, businesses and other places that children or other potential victims may frequent; and

"(d) Any prior victim of the offender.

---

[1] In 1995, Legislative Counsel renumbered *former* ORS 181.507 to ORS 181.509 as ORS 181.585 to ORS 181.587. It also numbered two related new statutes as ORS 181.588 and ORS 181.589. Because those changes are irrelevant to this opinion, we will refer to all statutes by their current designations.

[2] Either the Department of Corrections or a community corrections agency has the same responsibility for persons who are on probation under the agency's supervision. ORS 181.586(1).

"(3) When an agency determines that notification *is necessary*, the agency *may use* any method of communication that the agency determines is appropriate. The notification *may include*, but is not limited to, distribution of the following information:

"(a) The person's name and address;

"(b) A physical description of the person including, but not limited to, the person's age, height, weight and eye and hair color;

"(c) The type of vehicle that the person is known to drive;

"(d) Any conditions or restrictions upon the person's probation, parole, post-prison supervision or conditional release;

"(e) A description of the person's primary and secondary targets;

"(f) A description of the person's method of offense;

"(g) A current photograph of the person; and

"(h) The name or telephone number of the person's parole and probation officer." (Emphasis supplied.)

This information is also available to anyone on request unless the Board determines that releasing it would substantially interfere with the offender's treatment or rehabilitation. ORS 181.587. Finally, ORS 181.588 gives police agencies similar authority to provide information concerning predatory sex offenders who are not under active supervision,[3] and ORS 181.589 provides for discretionary disclosure of information concerning juvenile predatory sex offenders.

In *Williford v. Board of Parole*, 137 Or App 254, 904 P2d 1074 (1995), we held that notification under the predatory sex offender statute does not constitute punishment and, thus, cannot violate the *ex post facto* clauses. We pointed out that not every legal change that has a deleterious effect on an individual is punishment, giving as an example *State v. Burke*, 109 Or App 7, 11, 818 P2d 511, *rev den* 312 Or 589

---

[3] The police may not, however, release lists of registered sex offenders or addresses of registered sex offenders to the public. ORS 181.588(3).

(1992). In *Burke*, we had held that eliminating the possibility of expunging a conviction for a sex crime was not an *ex post facto* violation, because the change did not relate to the length or nature of incarceration and its purpose was not punitive.

In our decision in *Williford*, we emphasized that the petitioner did "not explain why notification here constitutes punishment." 137 Or App at 256-57. Unlike the petitioner in *Williford*, petitioner in this case has gone well beyond the conclusory statements that were all that the petitioner presented, or that we considered, in *Williford*. For these reasons, we do not consider that *Williford* disposes of this case.

■  We first determine the issues that are ripe for our review and then discuss the correct analysis of those issues. Petitioner attacks many aspects of the predatory sex offender statutes. Not all of his challenges, however, are ripe for our review. So far as the record discloses, all that the Board has done to this point is to find that petitioner is a predatory sex offender. The record does not show that it has taken any steps toward notifying anyone of that determination or of any other information concerning petitioner.

Declaring petitioner to be a predatory sex offender does not, by itself, authorize any notification; rather, it is preliminary to a decision under ORS 181.586(1) of whether it is appropriate to notify anyone about anything. As the portions of the statute that we previously emphasized show, the Board must now "consider" whether notification "is necessary" and then "may use" any appropriate method to disseminate information that "may include" a number of different things. ORS 181.586(2), (3). The statute gives the Board broad discretion; we cannot determine its effect on petitioner until the Board has decided how to exercise that discretion. In short, we cannot tell from this record what information others will learn about petitioner, or how they will learn it, as a result of the designation.

■■  A court can decide only justiciable controversies. To be justiciable, a controversy must be definite and concrete rather than a request for advice on what the law would be on a hypothetical state of facts. *Cummings Constr. v. School Dist. No. 9*, 242 Or 106, 110, 408 P2d 80 (1965). In *Artway v.*

*Attorney General of State of N.J.*, 81 F3d 1235, *reh'g den* 83 F3d 594 (3d Cir 1996), the plaintiff challenged both the registration and notification provisions of New Jersey's "Megan's Law." Under that statute, the state would not determine whether the plaintiff was subject to the public notification provisions until after he registered, which he had not yet done. The Third Circuit held that his challenges to the notification provisions were therefore hypothetical and not ripe for decision. It noted that its action did not work a hardship on the plaintiff, because, if the state decided that community notification was appropriate, he could sue at that time to enjoin it. 81 F3d at 1247-49.[4]

In this case, we cannot determine who, if anyone, the Board will notify, or what, if any, information it will provide. As we discuss below, determining whether a particular sanction is punishment will often require a careful analysis of the precise facts of each situation. Notifying petitioner's victims of his county of residence, for instance, might well have a different character from posting flyers containing his name, picture and address on every power pole in his neighborhood.[5] The only issue that is ripe for decision here is whether designating petitioner as a predatory sex offender is in itself punishment and thus violates the *Ex Post Facto* Clause. We hold that that designation, without more, is not punishment.

■ Petitioner asserts that finding him to be a predatory sex offender is punitive, because giving him that label is "high-tech branding"[6] that is similar to traditional punishments whose purpose was to hold the offender up to public

---

[4] The court also noted that there was insufficient information in the record to determine the effects of community notification on the plaintiff, thus making the case unfit at that time for judicial determination. It did indicate, however, that, if the state subjected the plaintiff to community notification, he might then be able to present evidence on the probable effect of that decision as part of a prenotification challenge. 81 F3d at 1249-51 and n 9.

[5] Courts that have discussed this issue appear to be most sympathetic to claims that widespread public notification is similar to previous punishments, such as branding or the stocks, whose purpose was public humiliation and shame. *See, e.g., Artway*, 81 F3d at 1265; *Rowe v. Burton*, 884 F Supp 1372, 1378 (D Alaska 1994); *Doe v. Pataki*, 919 F Supp 691, 700-02 (SDNY 1996).

[6] Whether or not the statute provides for a sanction similar to branding, it is difficult to see what is "high-tech" about the notification procedures. The great majority of them were available in Hester Prynne's time.

humiliation and shame. *See* Note, "The Modern Day Scarlet Letter: A Critical Analysis of Modern Probation Conditions," 1989 Duke LJ 1357, 1360-62 (November 1989) (describing traditional punishments and their purposes). The Board responds that the law simply provides for an additional condition of parole and that the Board has always had a broad discretion in establishing such conditions. Neither side's argument satisfactorily addresses the issue that we are able to review.[7]

■ In deciding whether a statute violates the state or federal *ex post facto* clauses, the Oregon Supreme Court has relied primarily on United States Supreme Court decisions under the federal constitution. *See State v. Wille*, 317 Or 487, 501-03, 858 P2d 128 (1993); *State v. Gallant*, 307 Or 152, 155, 764 P2d 920 (1988).[8] *Cf. State v. Cookman*, 324 Or 19, 920 P2d 1086 (1996) (deciding *ex post facto* issue solely under Oregon Constitution). The United States Supreme Court has identified three categories of interests that the federal *Ex Post Facto* Clause protects; the Oregon court has adopted that analysis. A statute violates the *Ex Post Facto* Clause if it (1) punishes as a crime an act that was not criminal when committed; (2) makes the punishment for a crime more burdensome than it was when the crime was committed; or (3) deprives a person of a defense that was available when the act was committed. *Collins v. Youngblood*, 497 US 37, 41, 110 S Ct 2715, 111 L Ed 2d 30 (1990); *Wille*, 317 Or at 502.

Recent decisions of the United States Supreme Court have discussed whether particular sanctions are punishment in various contexts and in relation to various provisions of the federal constitution. *See California Department*

---

[7] The Board's argument that the determination simply adds a condition of parole ignores, among other things, that the designation and notification may continue indefinitely after active supervision ceases. *See* ORS 181.588.

[8] Even when the Oregon courts adopt the federal construction applicable to a corresponding Oregon constitutional provision, that construction remains Oregon law, subject to further Oregon analysis, if the federal construction later changes. *See State v. Wilson*, 323 Or 498, 514 n 10, 918 P2d 826 (1996), *quoting State v. Caraher*, 293 Or 741, 749, 653 P2d 942 (1982). Defendants have made no argument that we should not follow recent United States Supreme Court decisions on the issues involved in this case. *See Umatilla County v. $18,005 in U. S. Currency*, 142 Or App 513, 515, 921 P2d 426 (1996). We therefore decide this case solely on the basis of the federal decisions.

*of Corrections v. Morales,* 514 US 499, 115 S Ct 1597, 131 L Ed 2d 588 (1995) (parole consideration—*Ex Post Facto* Clause); *Montana Department of Revenue v. Kurth Ranch,* 511 US 767, 114 S Ct 1937, 128 L Ed 2d 767 (1994) (marijuana tax—Double Jeopardy Clause); *Austin v. U.S.,* 509 US 602, 113 S Ct 2801, 125 L Ed 2d 488 (1993) (civil forfeiture—Excessive Fines Clause); *U.S. v. Halper,* 490 US 435, 109 S Ct 1892, 104 L Ed 2d 487 (1989) (civil penalty—Double Jeopardy Clause). Although each of these cases dealt with a specific situation and a specific constitutional provision, until recently many thought that the Court was developing a general understanding of "punishment" that would apply in a wide range of situations. Most courts assumed, at the least, that the definitions of "punishment" in these cases had some relationship to each other. *See, e.g., State v. Phillips,* 138 Or App 468, 909 P2d 882, *rev den* 323 Or 114 (1996) (court pointed out the different constitutional provisions involved in *Halper, Austin,* and *Kurth Ranch* but used analysis from all three cases in determining that administrative suspension of license for failing breathalyzer test was not punishment under Double Jeopardy Clause).

In April 1996, the Third Circuit, in an elaborate opinion, discussed these and other cases and derived a test from them for determining when a particular state requirement constitutes punishment under the *Ex Post Facto* Clause. In doing so it assumed that "punishment" had the same meaning in all circumstances and did not distinguish in that respect among the constitutional provisions involved in each case. The court then applied its test to hold that requiring convicted sex offenders to register is not punishment that violated the *Ex Post Facto* Clause. *Artway,* 81 F3d at 1263-67. This result was consistent with other decisions on the issue. *See, e.g., State v. Noble,* 171 Ariz 171, 829 P2d 1217 (1992); *State v. Costello,* 643 A2d 531 (NH 1994); *State v. Ward,* 123 Wash 2d 488, 869 P2d 1062 (1994).

In June 1996, after the Third Circuit's denial of rehearing in *Artway,* the Supreme Court held in *United States v. Ursery,* ___ US ___ , 116 S Ct 2135, 135 L Ed 2d 549 (1996), that a civil forfeiture did not constitute punishment for the purposes of the Double Jeopardy Clause and,

thus, would neither prevent a subsequent criminal prosecution after a forfeiture nor a subsequent forfeiture after a criminal prosecution. In doing so the Court focussed on the specific nature of civil forfeitures, limiting its discussions of "punishment" in *Halper, Austin,* and *Kurth Ranch* to the specific contexts of each particular case and stating that those discussions were often inapplicable to other contexts. 116 S Ct at 2142-47. Rather than relying on those cases, the Court turned to a test that it had established in a previous forfeiture case and held that "civil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause." 116 S Ct at 2147.[9]

As a result of *Ursery* we must review earlier cases, emphasizing those that expressly deal with the *Ex Post Facto* Clause, in order to determine whether finding petitioner to be a predatory sex offender constitutes punishment under that clause.[10] The most relevant of those cases is *De Veau v. Braisted*, 363 US 144, 80 S Ct 1146, 4 L Ed 2d 1109 (1960), in which the Court held that the mark of an *ex post facto* law is "the imposition of what can fairly be designated punishment for past acts." It stated that the question in evaluating whether a statute that imposes unpleasant consequences on an individual is punishment is "whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation * * *." 363 US at 160.

■ The first question is whether the legislative purpose in enacting the predatory sex offender law was punitive.[11] If

---

[9] In his concurrence in *Ursery*, Justice Kennedy expressed the opinion that a civil forfeiture is punitive but that it is not punishment for purposes of the Double Jeopardy Clause. 116 S Ct at 2149-52. The concurrence, thus, emphasizes that *Ursery* rejects any attempt to create a common meaning of "punishment" that will apply to all federal constitutional provisions.

[10] *Morales* is the only recent case that directly involved an *ex post facto* issue— whether a reduction in the frequency of parole board suitability hearings was an increase in the prisoner's punishment. There was no question that the prisoner's continued incarceration was, in fact, punishment. In contrast, in this case the issue is whether the requirement that a released sex offender register is punishment at all; if it is not, there can be no *ex post facto* violation. *Morales*, thus, is not helpful to this case.

[11] We are determining whether the legislature's purpose was punitive in order to decide the constitutional effect of that purpose, not the meaning of the statute.

it was, the designation constitutes punishment. Determining that the purpose was nonpunitive does not end the inquiry, however, but simply leads to the second question, whether the designation is so punitive in its nature or effect as to negate the nonpunitive intention. *See United States v. Ward*, 448 US 242, 248-49, 100 S Ct 2636, 65 L Ed 2d 742 (1980).[12]

The legislature did not expressly state its purpose in adopting the predatory sex offender statutes, so we must determine that purpose from the statute itself. The persons who qualify for designation as predatory sex offenders are those who have committed sexual offenses in the past and whose conduct and personalities indicate that they have a greater than average likelihood of committing those offenses in the future. Giving those persons a special designation primarily serves the regulatory purpose of identifying offenders who require special treatment or other attention, either while incarcerated or while on supervised or unsupervised release. That is not a punitive purpose.

The designation, thus, can be fully explained by a nonpunitive purpose, and we turn to the second question. There is no basis for believing that the designation was traditionally regarded as punishment, there is nothing to suggest that the legislature actually intended it as punishment, and there is no reason on the record to believe that simply identifying petitioner as a predatory sex offender has impermissible punitive effects. Thus, the designation is not in its nature or effect so punitive as to negate the legislature's nonpunitive purpose.

Because the Board's decision that we can review is not punishment under the test that we have found in the relevant Supreme Court decisions, we hold that designating petitioner as a predatory sex offender does not violate the *Ex Post Facto* Clause.

Affirmed.

---

The analysis in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), is therefore irrelevant to our determination.

[12] This test is the same as the two part test for determining whether a forfeiture is punishment under the Double Jeopardy Clause. *Ursery*, 116 S Ct at 2147; *United States v. One Assortment of 89 Firearms*, 465 US 354, 362-63, 104 S Ct 1099, 79 L Ed 2d 361 (1984).